IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BLAKE WOLFE, KELLY WOLFE, RICHARD LEE, ERIC LARSON, INNA LARSON, ALMA BRAGAGNOLO, DAN CASHIN & ELLE CASHIN,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, MAYOR JOHNSON, GARDA WORLD & JOANNA SOBRAN,<br><br>Defendants. | Case No. 23 C 15121<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Defendants City of Chicago, Mayor Johnson, Garda World, and Joanna Sobra (collectively, "City of Chicago" or "the City") move to dismiss Plaintiffs' four-count Complaint bringing Constitutional Substantive and Due Process claims against the City of Chicago for the City's decision to utilize a vacant building located at 526 N. Western Avenue ("the Property") as a migrant shelter. Defendants bring their Motion to Dismiss under Rule 12(b)(1) and 12(b)(6). For the reasons stated herein, the Court GRANTS Defendants' Motion to Dismiss, and Plaintiffs' Complaint is dismissed with prejudice.

I. **BACKGROUND**

A. **Procedural Background**

Plaintiffs filed suit against Defendants on October 18, 2023 (Dkt. No. 1). In the same document, Plaintiffs moved for an Emergency Temporary Restraining Order seeking to prevent the City from using the Property as a housing unit for 200 newly arrived migrant men. A week later, Plaintiffs filed an Amended Complaint (Dkt. No. 10) and a renewed Motion for Emergency Temporary Restraining Order (Dkt. No. 11). That same day, the parties convened before this Court for a status call during which this Court orally denied Plaintiffs' Emergency Motion because Plaintiffs failed to establish a likelihood of success on the merits due to a lack of standing under Article III of the Constitution (Dkt. No. 12). On November 7, 2023, Defendants moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of standing and under 12(b)(6) for failure to state a claim upon which relief could be granted (Dkt. Nos. 13, 14). Plaintiffs failed to file a timely response to Defendants' Motion – or any response, for that matter – despite this Court's order that any response be filed by November 28, 2023 (Dkt. No. 12).

Plaintiffs' failure to respond operates as a forfeiture of the claim and an abandonment of any argument against dismissing the claim. *See Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) (forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ( "Failure to respond to an argument [in a motion to dismiss] – as the [plaintiffs] have done here – results in waiver."); *County of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 818 (7th Cir. 2006)

("When presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action.") (cleaned up).

Some courts in the Seventh Circuit have held that a failure to respond to a motion to dismiss amounts to a forfeiture of claims and have dismissed the complaint outright without examining the merits. *Woody v. Illinois,* 2013 WL 4945226, at *2 (N.D. Ill. Sept. 10, 2013) (collecting cases). However, for the sake of completeness, the Court will proceed to the Motion's merits. *Id.*

## B. Factual Background

Plaintiffs' Amended Complaint alleges the following facts: On October 12, 2023, the Alderman for the Chicago ward at issue in Chicago, Illinois, and other city officials held a neighborhood meeting to discuss the use of a vacant building located at 526 N. Western Avenue, Chicago, IL 60612, for a migrant shelter. Plaintiffs attended this meeting, and in it learned that the city had decided to move forward with the plan. The building is intended to house 200 men, is 10,000 square feet, and is in the residential neighborhood in which Plaintiffs live, close to a liquor store, family homes, and a local park. Two days later, on October 14, 2023, neighboring residents met with the Alderman, who shared that it was his opinion that Mayor Brandon Johnson's decision to use the Property as a migrant shelter was an exploitation of the Governor's "declaration of emergency" for the migrant crisis and was in circumvention of local legal requirements and constitutional due process. The Alderman communicated that he had proposed two other possible properties to use as the shelter that were not as close to the family homes, a family park, or a liquor store, but that Mayor Johnson had declined to go ahead with

these alternatives. Plaintiffs allege that Defendants have violated local zoning ordinance and city codes, as the building has insufficient bathrooms and fire suppression for the 200 migrant men. Plaintiffs also allege that as Chicago taxpayers, they are footing the bill for the migrants' housing and food even though the use of the Property as a migrant shelter violates state and city law.

Plaintiffs' Complaint brings four counts: Count I seeks a declaratory judgment that using the Property as a migrant shelter is unlawful; Count II seeks a preliminary and permanent injunction on the use of the Property as a migrant shelter; Count III brings Fifth and Fourteenth Amendment Procedural Due Process claims under 42 U.S.C. § 1983; and Count IV brings Fifth and Fourteenth amendment Substantive Due Process claims under 42 U.S.C. § 1983.

## II. DISCUSSION

### A. Counts I & II

Counts I and II bring claims for a Declaratory Judgment and a Preliminary and Permanent Injunction, respectively. But neither alleges a substantive claim. The Declaratory Judgment Act does not provide an independent cause of action. *Garrard v. Rust-Oleum Corp.*, 575 F. Supp. 3d 995, 1004 (N.D. Ill. 2021) ("[The Declaratory Judgment Act's] operation is procedural only – to provide a form of relief previously unavailable.") (cleaned up). And like declaratory relief, "injunctive relief . . . is a remedy, not a cause of action, and thus should not be pleaded as a separate count." *Knutson v. Vill. of Lakemoor*, 932 F.3d 572, 576 n.4 (7th Cir. 2019). Further, as described below, Plaintiffs do not plead sufficient federal standing in their due process claims, so there is

no claim that entitles them to either a declaratory judgment or injunctive relief as remedies anyway. Thus, Counts I and II are dismissed with prejudice.

### B. Counts III & IV

Defendants move to dismiss Counts III and IV under both Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Because the Court grants Defendants' Motion under 12(b)(1) for lack of federal standing, the Court need not assess the Complaint's plausibility under 12(b)(6).

For standing under Article III, a plaintiff must have: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016). When a plaintiff lacks standing, a federal court lacks jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Establishing standing is the plaintiff's burden and "must be secured at each stage of the litigation." *Bazile v. Fin. Syst. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

Because Defendants Rule 12(b)(1) motion contends that Plaintiffs' Complaint lacks sufficient factual allegations to establish standing, it is properly understood as a facial attack on subject matter jurisdiction. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). A facial attack "require[s] only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis omitted). At the motion to dismiss stage, the Court employs the familiar "plausibility" requirement used for

challenges brought under Rule 12(b)(6). *Silha*, 807 F.3d at 174. We thus accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the Plaintiff. *Id.* at 173. Accord, *Prairie River Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

After stripping away all conclusory statements of wrongdoing, Plaintiffs' Complaint contains the following alleged facts: Governor Pritzker declared a "State of Emergency" in the city of Chicago during a migrant crisis. There was a townhall meeting with a local Alderman in which it was communicated that Mayor Brandon Johnson decided to use a vacant property located at 526 N. Western Avenue, Chicago IL 60612 as a migrant shelter for 200 men, instead of two other alternatives that the Alderman had presented. The vacant lot is a 10,000 square foot building near residences, a liquor store, and a local park. According to Plaintiffs, the use of this property as a migrant shelter violates local ordinances and zoning laws, in part because there are only two bathrooms for 200 men, and noncompliant fire suppression and safety systems in place. According to Plaintiffs, the use of this property as a migrant shelter will put local residents and the migrants themselves in danger. Plaintiffs also allege that the "over-reach of the emergency decree to claim executive power will [] cause property value injury to the homeowners." (Compl. ¶ 31.) Plaintiffs also allege the migrant men will cause the local park to become unusable. This all constitutes, for Plaintiffs, a deprivation of property without substantive or procedural due process.

Defendants argue that Plaintiffs' factual allegations fail to support any "injury in fact" sufficient for Art. III federal jurisdiction. The Court agrees. A sufficiently pled injury

in fact must be "concrete and particularized," and actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). None of Plaintiffs' alleged "injuries" meet this standard. The Court will assess each in turn.

First, Plaintiffs allege that use of the Property as a migrant shelter will depreciate the residents' property value and note there are experts ready to testify that "unequivocally [] property values will drop substantially and make homes/condos in close proximity to [the Property] all but unsellable." (Compl. ¶ 31.) While a future injury can satisfy Article III standing requirements, the injury must be "in a word, imminent." *Prosser v. Becerra*, 2 F.4th 708, 714 (7th Cir. 2021). Possible depreciation in value of some of the surrounding homes is precisely the kind of speculative and hypothetical injury that courts dismiss for lack of standing. In *Ruggles v. Ige,* the plaintiff alleged the opening of a medical marijuana dispensary would damage his property value, but the court found the "anticipated decline in property value . . . [to be] purely conjectural or hypothetical," and dismissed the complaint with prejudice. 2017 WL 427498, at *1, *6 (D. Hawai'i Jan. 31, 2017). *Cf Kathrein v. City of Evanston, Ill.,* 636 F.3d 906, 914 (7th Cir. 2011) (finding that a "demonstrable reduction in the market value of one's property is an injury in fact for standing purposes," as opposed to a hypothetical reduction in market value). Simlarly, in *Feinberg v. Apple, Inc.*, the plaintiff alleged that the building of Defendant Apple, Inc.'s retail store would constitute a fire hazard and nuisance, and that his property's proximity to the store was within the "zone of danger," regarding harm he *may* suffer *if* the store were to operate. 2016 WL 4371746, at *2 (S.D.N.Y. Aug. 10, 2016). The Court dismissed

Case: 1:23-cv-15121 Document #: 17 Filed: 02/06/24 Page 8 of 10 PageID #:84

the complaint because this injury was a "mere prediction[] of harm," too "speculative and hypothetical," and "insufficient to confer constitutional standing." *Id.* at *2–3. Similarly,

Second, Plaintiff vaguely alleges injury to the local community by way of the shelter turning nearby parking lots into "hang-out spots" and by harming the local park so that the park, normally "filled with children, moms, dads, babysitters, people jogging," will no longer be usable for local residents. (Compl. ¶¶ 28, 29, 34.) This, too, is far too conjectural to meet the standards for Art. III standing. Further, Plaintiffs cannot "repackage an injury to a park as an injury to plaintiffs themselves" to satisfy standing. *Protect Our Parks, Inc. v. Chicago Park Dist.*, 971 F.3d 722, 732 (7th Cir. 2020). "The relevant showing for purposes of Article III standing is not injury to the environment but injury to the plaintiff." *Friends of the Earth, Inc. v. Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167, 169 (2000).

Third, Plaintiffs allege that transitioning the Property into a migrant shelter would violate state ordinances and local zoning laws. However, because a government's departure from its own procedures is not a particularized injury, but one shared by the general public, such allegations are "precisely the sorts of widely shared grievances about government that the Supreme Court has long held insufficient to generate a case or controversy under Article III." *Penny v. Pelosi*, 2021 WL 6102166, at *1 (7th Cir. Dec. 23, 2021). In *Protect Our Parks*, the plaintiffs made similar allegations, claiming that under Illinois law, the defendant park district had acted *ultra vires* and in violation of state public trust doctrine by entering into a use agreement with the Obama Foundation for the construction of an Obama Presidential Center. 971 F.3d at 728. The Seventh Circuit held

that while the plaintiffs may have standing in state court, "[f]or Article III purposes, the plaintiffs are nothing more than concerned bystanders, and concerned bystanders are not entitled to press their claims in federal court." *Id.* at 732 (internal citation omitted).

Fourth, Plaintiffs allege that if the Property was permitted to transition into a shelter, there would be harm to the migrants. Plaintiffs allege the situation would be "inhumane" to the migrants because the building is not compliant with zoning laws, and without a proper fire suppression system and insufficient bathrooms. (Compl. ¶¶ 21-24.) However, it is a "well-established prudential standing limitation" that litigants cannot sue in federal court to enforce rights of third parties. *Rawoof v. Texor Petroleum Co., Inc.,* 521 F.3d 750, 757 (7th Cir. 2008). In some cases, courts have allowed third-party standing when "enforcement of the challenged restriction *against the litigant* would result indirectly in the violation of third parties' rights." *Kowalski v. Tesmer,* 543 U.S. 125, 130 (2004) (citation omitted) (emphasis in original). That is not the case here. To the extent migrants suffer or suffered any injuries from the use of the Property as a migrant shelter, they would have to bring these claims themselves.

Fifth, the Court surmises that Plaintiffs' attempt to plead taxpayer standing, since their Complaint references the financial toll that the migrant shelter would take on them as taxpayers. (Compl. ¶ 31.) Municipal taxpayer standing is a narrow doctrine permitting a taxpayer the ability to challenge the misappropriation of public funds. "Municipal taxpayers have standing to sue only when they have both identified an action on the city's part that is allegedly illegal and adequately shown that city tax dollars will be spent on that illegal activity." *Protect Our Parks*, 971 F.3d at 736. Plaintiffs have satisfied neither

prong. They have not identified exactly what action is allegedly illegal, nor have they even alleged that the City will pay for the project with municipal taxes. *Id.* at 735. ("It is not enough to simply allege that the City is spending money; the existence of municipal taxpayer standing depends on where the money comes from.") Thus, Counts III and IV are dismissed with prejudice.

### III.  CONCLUSION

For the reasons stated herein, the Court finds that Plaintiffs lack Art. III standing and the Complaint is dismissed with prejudice for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**

                                                       Harry D. Leinenweber, Judge
                                                       United States District Court

Dated: 2/6/2024